## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o United States Attorney's Office<br>555 Fourth St., N.W.<br>Washington, D.C.  20530<br><br>          Plaintiff,<br><br>      v.<br><br>$302,032.43 IN FUNDS SEIZED FROM<br>THE M&T BANK ACCOUNT ENDING<br>IN 6629, HELD IN THE NAME<br>OF "VENTRICLE ADVISORY<br>CONSULTANTS ESCROW ACCOUNT,"<br> and<br><br>$147,001.20 IN FUNDS SEIZED FROM<br>THE M&T BANK ACCOUNT ENDING<br>IN 1852, HELD IN THE NAME<br>OF "VENTRICLE ADVISORY<br>CONSULTANTS,"<br><br>          Defendants. | Civil Action No. |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

*COMES NOW*, plaintiff, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, to bring this verified complaint in a civil action *in rem* against the defendant property, which is $449,033.63 in funds, which was seized by law enforcement on February 17, 2017.

## NATURE OF THE ACTION AND DEFENDANT *IN REM*

1.      This is a civil action *in rem* for the forfeiture of the defendant funds to the use and benefit of the plaintiff, the United States.  Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18

U.S.C. § 1343 (wire fraud) is subject to civil forfeiture. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, which is involved in a transaction (or an attempted transaction) in violation of 18 U.S.C. § 1957, or any property which is traceable to such property, is subject to civil forfeiture.

## The Defendants *In Rem*

2.     The defendant funds, totaling $449,033.63, were seized by the Federal Bureau of Investigation (FBI) from two separate bank accounts held at M&T Bank on February 17, 2017, pursuant to seizure warrants issued by this Court. The defendant funds are described as follows:

a.     $302,032.43 in funds from the M&T Bank account number ending in 6629 held in the name of "Ventricle Advisory Consultants Escrow Account;" and

b.     $147,001.20 in funds from the M&T Bank account number ending in 1852 held in the name of "Ventricle Advisory Consultants."

3.     The defendant funds are in the custody of the United States Marshal's Service. After the seizure, the FBI commenced procedures for the defendant funds' forfeiture by a non-judicial, administrative process.

## JURISDICTION AND VENUE

4.     This Court has original jurisdiction of this civil action by virtue of 28 U.S.C. § 1345, because it has been commenced by the United States, and by virtue of 28 U.S.C. § 1355(a), because it is an action for the recovery and enforcement of a forfeiture under an Act of Congress. Venue is proper in this District by virtue of 28 U.S.C. § 1355(b)(1), because this is a forfeiture action or proceeding brought in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred. The defendant property is now, and during the pendency of this action will be, in the jurisdiction of this Court.

5.      This civil action *in rem* for forfeiture is governed by 18 U.S.C. § 983, the Federal

Rules of Civil Procedure, and the Supplemental Rules for Admiralty Or Maritime Claims And

Asset Forfeiture Actions, particularly Rule G.

## CRIMINAL STATUTES

### Fraud Offenses

6.      The wire fraud statute, 18 U.S.C. § 1343, provides for the prosecution of anyone

who, "having devised or intending to devise any scheme or artifice to defraud," then "transmits

or causes to be transmitted by means of wire . . . communication in interstate or foreign

commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such

scheme or artifice."

### Money Laundering Offense

7.      The money-laundering "spending statute," 18 U.S.C. § 1957, prohibits knowingly

engaging in a monetary transaction in criminally-derived property which has a value greater than

$10,000, and which is derived from specified unlawful activity.  The definitional provision of the

money-laundering statutes, 18 U.S.C. § 1956(c)(7)(A), defines "specified unlawful activity" to

include violations of 18 U.S.C. § 1343 (Wire Fraud).

### Fungible Property Statute

8.      Title 18 U.S.C. § 984(a) provides:

> (a)(1) In any forfeiture action *in rem* and in which the subject
> property is cash . . . [or] funds deposited in an account in a
> financial institution . . .
>
> it shall not be necessary for the Government to identify the specific
> property involved in the offense that is the basis for the forfeiture;
> and
>
> it shall not be a defense that the property involved in such an
> offense has been removed and replaced by identical property.

> (2)      Except as provided in Subsection (b), any identical
> property found in the same place or account as the property
> involved in the offense that is the basis for the forfeiture shall be
> subject to forfeiture under this section.

In essence, for civil forfeiture, 18 U.S.C. § 984 allows the United States to seize identical

substitute property found in the same place where the "guilty" property had been kept.  *See*

*United States v. All Funds Presently on Deposit at American Express Bank*, 832 F. Supp. 542,

557-58 (E.D.N.Y. 1993).  18 U.S.C. § 984 applies to civil forfeiture actions commenced within

one year from the date of the offense.

### PROBABLE CAUSE

### Background

9.      The conduct under investigation involves investment fraud conducted by James

Benjamin ("BENJAMIN"), of Ellicott City, Maryland.  BENJAMIN conducts business through

Ventricle Advisory Consultants, LLC ("VENTRICLE").  VENTRICLE is a Maryland limited

liability company.  According to publicly-available records, VENTRICLE was incorporated on

January 25, 2012.  The mailing address for VENTRICLE is in Ellicott City, Maryland and is the

same address listed as BENJAMIN's residence on his Maryland Drivers' License.

10.      BENJAMIN first came to the attention of the FBI through an investigation into

another scheme, where BENJAMIN was the victim of fraud.  That investigation showed that,

using VENTRICLE, BENJAMIN and an individual identified herein as J.G. had invested money

with a subject identified herein as T.G.  The investigation further showed that T.G. failed to

invest VENTRICLE's money, but instead used the money for other purposes.

11.      During the course of that investigation, J.G. and BENAJMIN provided statements

to the FBI.  The investigation uncovered evidence that, while VENTRICLE was a victim of

T.G.'s fraud, BENJAMIN was defrauding J.G. as J.G. was the source of funds for the

4

VENTRICLE investment.  Specifically, J.G. provided $250,000 for the investment.  Based on

BENJAMIN's representations, J.G. believed that all $250,000 would be invested.   However,

bank records showed that BENJAMIN only provided $200,000 to T.G. for the alleged

"investment."  The remaining $50,000 was spent on what appeared to be personal expenses.

Subsequently, T.G. refunded $200,000 to BENJAMIN and BENJAMIN returned to J.G. slightly

less than $100,000.

### Investment Fraud on D.L.

12.     In or about January 2017, the FBI became aware of an apparent victim identified

herein as "D.L."  D.L., a resident of Charlotte, North Carolina, met BENJAMIN in 2015 or 2016

when she was trying to find someone to help her invest money.  D.L. was referred to

BENJAMIN by a financial advisor in Charlotte.  BENJAMIN traveled to Charlotte to meet with

D.L.  BENJAMIN talked to D.L. about investing her money and assisted D.L. with setting up a

company to facilitate the investments.

13.     D.L. is approximately 57 years old and suffers from schizophrenia.  D.L. stated

that this sometimes makes it difficult to remember things.  According to a relative of D.L., D.L.

sometimes has difficulty reading documents or maintaining sufficient attention to focus on

television shows or movies.  According to text messages obtained from D.L.'s phone, D.L.

discussed her physical and mental health status with BENJAMIN.

14.     D.L. would frequently ask BENJAMIN questions about her investments.

BENJAMIN would typically reply over the telephone, but would also send e-mails and text

messages.  BENJAMIN would send D.L. reassuring messages.

**D.L.'s July 2016 Investment**

15.     BENJAMIN originally told D.L. that her money would be held in a bank account for one year, where it would be used for some kind of investment but later told her that the money would have to remain locked in the bank account for two years.  BENJAMIN promised that the money would be used for a high-yield investment and purported to have experience in investing in real estate and bank "instruments."

16.     BENJAMIN and D.L. subsequently entered into a written agreement.  That agreement describes a fee arrangement between D.L. and VENTRICLE, and was signed by D.L. on August 14, 2016.  It states:

> I, [D.L.], . . . promise to pay 15% of the investment, principle (sic), and a equal share [of] gains from proceeds derived from banking instruments, and investment gains, commercial real estate swaps, and collateral funding, through our professional association with trading associates and Banking relationships to Ventricle Advisory Consultants LLC, and in the event of the use of Paymasters of Escrow Attorneys, Ventricle engages for business transactions, we will pay all from the proceeds collected as dictated by this agreement.  I also acknowledge the payout will be accessed with each and every distribution.

The agreement further states later that the objective of the agreement was for D.L.'s money to be invested in "trading and leveraging in banking instruments and commercial real property trades." The document has typewritten dates of March 16, 2015, March 6, 2015, and August 13, 2016, but the handwritten date is August 14, 2016.

17.     On or about July 29, 2016, based on BENJAMIN's representations, D.L. arranged for a $563,805.84 wire transfer from a family account in Germany to a bank account in the name of HG International PLLC.  HG International PLLC ("HG International") is incorporated in the District of Columbia with a principal place of business in Vienna, Virginia.  HG International is

controlled by an attorney identified herein as R.H., with whom BENJAMIN has had business contacts.

18.     Immediately before the $563,805.84 wire transfer from Germany, the balance in the HG International account was $50.68.

19.     BENJAMIN instructed D.L. to wire transfer the funds to HG International.

20.     According to records from M&T Bank, on or about August 8, 2016, $497,958 was wired from the HG International account to VENTRICLE's 6629 ACCOUNT.  BENJAMIN is the only authorized signer on the 6629 ACCOUNT.  Immediately before the wire from HG International, the balance of the 6629 ACCOUNT was $2,958.95.[1]

21.     A review of M&T Bank records shows that D.L.'s money was not invested as promised.  BENJAMIN spent, withdrew, or transferred approximately $120,000 of D.L.'s investment on other thing such as casinos, cash withdrawals, transfers of funds to other accounts, and for ostensibly personal expenses at restaurants, Safeway, the Home Depot, and other retailers.  This included $48,690 transferred to two separate Navy Federal Credit Union accounts held in the name of "DPMG LLC," which is an entity controlled by BENJAMIN.  Funds from these accounts were used to finance the purchase of two luxury automobiles by BENJAMIN.  Additionally, a total of $73,000 was transferred to the Ventricle Advisory Consultants M&T bank account ending in 1852.

22.     On August 10, 2016, BENJAMIN transferred $22,000.00 from the 6629 ACCOUNT to the 1852 ACCOUNT.  On November 8, 2016, BENJAMIN transferred $10,000.00 from the 6629 ACCOUNT to the 1852 ACCOUNT.

---

[1]     On or about August 9, 2016, $60,000 was wired from the HG International account to a Wells Fargo Bank account in the name of D.L.  The remaining money in the HG International account - - approximately $6,000 - - appears to have been retained by HG International and R.H. as a "services fee" of some type.

23.     BENJAMIN used $21,500 of the funds from the 6629 ACCOUNT for real estate-related investments by using those funds for down payments at foreclosure auctions.

24.     The remaining money, $302,032.43, remained in the 6629 ACCOUNT until all the funds in the account were seized by the FBI on February 17, 2017, pursuant to a seizure warrant issued by Magistrate Judge Michael G. Harvey, magistrate's number 1:17-mj-00092.

### D.L.'s November 2016 Investment

25.     After D.L.'s July 2016 investment, BENJAMIN continued to approach D.L. with additional investment opportunities.  On November 9, 2016, BENJAMIN emailed D.L. "the format for your Real Estate Participation."  He wrote:

> Our current portfolio of properties that underline the security of this portfolio is 3,600,000.00 WE are rehabbing and reselling 85% of this portfolio, but there are some long term income plays in this also. Since our objective is to secure you a monthly income, this is what I have come up with: Originally, we expected a 350k investment from your company; even though we are reducing that investment to 225,000.00 we are securing YOUR investment with the entire 3,600,000 and your return will equate to 16%, annually broken into MONTHLY income starting January 12th 2017[.]
>
> 225,000.00 x 16% is 36,000.00 annually, which is 3,000.00 monthly paid into your account. At the end of each year we will account for Any capital gains for that annual period to be paid back to D.L. CORP, at an amount Not to exceed a total of 22.5%. So your Capital Gains at the most will be 6.5% annually, thus once you combine your 16% income plus your 6.5% capital gains maximum percentage, it totals 22.5% payout or 50,625 annually.
>
> This will help you to manage your income exposure. WE will be securing your contributions with the entire portfolio to make sure you are SECURE with no worries. Additionally we will replace sold assets and update you with replaced assets so you can see we Never drop below a 3[]million security portfolio. Please call me with Any questions and we shall conclude this in the next couple of days.

26.     Three days later, on November 9, 2016, D.L. sent $225,000 from a Wells Fargo Bank account in the name of D.L.'s company to VENTRICLE's 1852 ACCOUNT.  BENJAMIN is the only authorized signer for the 1852 ACCOUNT.

27.     BENJAMIN failed to invest D.L.'s money in a manner as he had promised.

28.     Immediately before D.L.'s investment, the 1852 ACCOUNT contained $11,487.10.  Immediately after, the 1852 ACCOUNT contained $236,487.10.  Between November 9, 2016, and January 31, 2017, BENJAMIN spent, withdrew or transferred approximately $96,000 of D.L.'s investment on expenses that appear to be unrelated to the promised investment, including expenses that appear to be personal in nature.  These expenditures included over $5,000 in ATM withdrawals and a single $25,000 check to J.G., the victim described in *supra* paragraphs 10 and 11.

29.     BENJAMIN used $5,000 of the funds from the 1852 ACCOUNT for a real estate transaction, but failed to complete that transaction.

30.      All funds held in the 1852 ACCOUNT, which totaled $147,001.20, were seized by the FBI on February 17, 2017, pursuant to a seizure warrant issued by Magistrate Judge Michael G. Harvey, magistrate's number 1:17-mj-00093.

**Continuing the Scheme**

31.     BENJAMIN continued to solicit D.L. for additional investments.  In particular, BENJAMIN encouraged D.L. to "invest" in a transaction whereby he said that D.L. would obtain a $2,000,000 loan.  BENJAMIN knew that D.L. had recently bought a smaller home, while at the same time D.L. was trying to sell her previous, larger home.  BENJAMIN suggested that D.L. use both homes - - which D.L. and D.L.' relative believe to have a maximum combined value of $1,200,000  - - as collateral to obtain what he said would be a $2,000,000 loan.

32.    According to D.L., BENJAMIN told D.L. that she would have to pay a $48,500 fee to a financial firm up front (which D.L. did pay), that approximately $400,000 would be deducted for "fees," and that the remaining money would be invested on D.L.'s behalf. BENJAMIN told D.L. that interest derived from the investments would pay back the $2,000,000 loan and that D.L. would not have to worry about paying back the loan. BENJAMIN claimed that the investment returns would increase D.L.'s monthly income from $3,280 to about $7,000. BENJAMIN provided D.L. with documents related to this investment, including a document titled, "Application for Trade Finance Facility," which listed R.H. as a lawyer - - and HG International, the Washington, DC, incorporated law firm - - as representing the corporate entity formed by D.L.

33.    BENJAMIN failed to make the first required investment payment of $3,200 to D.L., which was due to be paid January 12, 2017.  As a result, D.L.'s relative confronted BENJAMIN about the alleged investment over the telephone.  When so confronted, BENJAMIN provided a variety of excuses about the delay.  D.L.'s relative requested BENJAMIN provide documentation to show where D.L.'s funds were invested.  BENJAMIN claimed the funds were invested "all over" and he would not provide the information to D.L.'s relative.

34.    On January 17, 2017, BENJAMIN e-mailed D.L. an "End of year status report" which was on VENTRICLE letterhead and purported to describe D.L.'s investment.  First, it listed a "principle [sic] contribution" of $500,000, as well as a $60,000 "distribution" from HG International.  The document then asserted, "Anticpated [sic] return over the commitment term of 24 months will typically produce 25% annually," and states that "We have currently commited [sic] funds for banking securities/SBLCs [Stand-by Letters of Credit] of 480,000.00 on behalf of the the [sic] following companies."  The "status report" then asserts that

VENTRICLE had made a $150,000 investment corresponding to "Jasoral Consulting"; a $100,000 investment corresponding to "Gideon Enterprise"; a $75,000 investment corresponding to "Essential Laser Treatment"; a $75,000 investment corresponding to "Black wire LLC"; a $25,000 investment corresponding to "SDS Networks"; and a $55,000 investment corresponding to "Mathews Protective services."  The "status report" does not describe any of these investments, other than using the reference to "banking securities/SBLCs."   These assertions are inconsistent with the use of the money shown in the M&T Bank records related to D.L.'s July 2016 investment.

35.     On January 18, 2017, after continual pressure from D.L.'s relative, BENJAMIN finally made a payment to D.L. for $3,280.  This payment was drawn directly from the 1852 ACCOUNT, which was the account that received D.L.'s $225,000 investment.

36.     On January 24, 2017, after continued demands, BENJAMIN e-mailed D.L. a "Confirmation report" purporting to provide details about her $225,000 investment.  This report showed a "principle [sic] contribution" of $225,000 and claimed that D.L. would receive a monthly distribution of $3,280.  The report further asserted that the income from this investment would be "income derived from the underlying portfolio of real property pruchased, [sic] sold, developed, or owned by Ventricle Advisory Consultants and it's [sic] subsidiary realty holding companies."

37.     The assertions in BENJAMIN's "confirmation report" are inconsistent with the use of the money shown in the M&T Bank records related to D.L.'s November 2016 investment. Aside from the one $5,000 deposit on the failed real estate transaction (*see supra* para. 29), the bank records for the 1852 ACCOUNT do not show any real estate related investments.

38.     On or about February 13, 2017, at the request of the FBI, D.L. and D.L.'s relative traveled to Washington, D.C. to meet with investigators.  Before the trip, D.L. sent text messages to BENJAMIN suggesting that they meet while she was close to BENJAMIN's residence in Maryland.  BENJAMIN agreed to meet with D.L.

39.     During her trip, at the request of investigators, but also because BENJAMIN had failed to make the required monthly distribution on February 12, 2017, D.L. continued to communicate with BENJAMIN, and to ask BENJAMIN for a meeting.  BENJAMIN ultimately claimed to be sick, and did not meet with D.L.

40.     However, while D.L. was located in Washington, D.C., D.L. exchanged numerous text messages with BENJAMIN.  BENJAMIN, who knew that D.L. was in Washington, D.C., told D.L. that he was sick in bed.  During the same text message exchange, BENJAMIN asked D.L. for her bank account information.

## ADMINISTRATIVE FORFEITURE OF THE FUNDS

41.     After the defendant funds were seized, the FBI began procedures to forfeit the defendant funds to the United States government via its administrative process, and the FBI gave notice of the forfeiture proceedings to BENJAMIN.

42.     On April 19, 2017, the FBI received at the Washington, D.C., Field Office, a claim of interest in the defendant funds from BENJAMIN, signed under penalty of perjury.  BENJAMIN's claim states in part that the funds "were[,] prior to seizure[,] being held in trust for the benefit of [D.L.]"

43.     No other claims were filed as to the defendant currency.  D.L. and J.G. filed separate petitions for remission, meaning that they were was applying to the FBI to have the funds remitted to them for their losses upon the final forfeiture of the funds.

## COUNT I

44.     All statements and averments made in paragraphs 1-43 are re-alleged and incorporated, herein, by reference.

45.     As described above, the defendant property constitutes or is derived from proceeds traceable to wire fraud, in violation of 18 U.S.C. § 1343.

46.     By reason of the above-described facts, the defendant property is subject to forfeiture to the United States pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C).

## COUNT II

47.     All statements and averments made in paragraphs 1-43 are re-alleged and incorporated, herein, by reference.

48.     As described above, the defendant property is property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957, or any property traceable to such property.

49.     By reason of the above-described facts, the defendant property was involved in monetary transactions over $10,000, in criminally derived property, in violation of 18 U.S.C. § 1957, and is, therefore, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the plaintiff prays that, as to the above-referenced defendant property, due process issue according to law; that, pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed and defendant

properties be condemned as forfeited to the United States of America; and for such other and

further relief as this Court may deem just, necessary and proper.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY

/s/Thomas P. Swanton _____
Thomas P. Swanton
Assistant United States Attorney
District of Columbia Bar No. 462144
Asset Forfeiture and Money Laundering Section
555 4th St., N.W., Room 4818
Washington, D.C. 20530
(202) 252-7063
thomas.swanton@usdoj.gov

**VERIFICATION**

I, Tristan S. Hall, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me or furnished to me by law enforcement agents and that everything contained in this Complaint is true and correct to the best of my knowledge.

Executed on this ___17___ day of January 2018.

Tristan S. Hall
Special Agent
Federal Bureau of Investigation

15

# CIVIL COVER SHEET

JS-44 (Rev. 5/12 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | $302,032.43 IN FUNDS SEIZED FROM M&T BANK ACCOUNT ENDING IN 6629; and $147,001.20 IN FUNDS SEIZED FROM M&T BANK ACCOUNT ENDING IN 1852 |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Thomas P. Swanton, Assistant U.S. Attorney U.S. Attorney's Office for the District of Columbia 555 Fourth Street, N.W. Washington, D.C.  20530 | Unknown |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (⦿) 1 U.S. Government Plaintiff
- (○) 2 U.S. Government Defendant
- (○) 3 Federal Question (U.S. Government Not a Party)
- (○) 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in This State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

**○ A.  Antitrust**

- ☐ 410  Antitrust

**○ B.  Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Product Liability

**○ C.  Administrative Agency Review**

- ☐ 151 Medicare Act

**Social Security**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**⦿ E.  General Civil (Other)          OR          ○ F.  Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 27 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Conditions
- ☐ 560 Civil Detainee – Conditions of Confinement

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☒ 690 Other

**Other Statutes**
- ☐ 375 False Claims Act
- ☐ 400 State  Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions
- ☐ 470 Racketeer Influenced & Corrupt Organization

- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/Privacy Act* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Remand from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi-district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
18 U.S.C. § 981(a)(1)(C), 18 U.S. C. § 1343, 18 U.S.C. § 981(a)(1)(A), & 18 U.S.C. § 1956-wire fraud & money laundering

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $** <br> **JURY DEMAND:** | Check YES only if demanded in complaint <br> YES ☐   NO ☒ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form |
|---|---|---|---|

| **DATE:** 01/17/2018 | **SIGNATURE OF ATTORNEY OF RECORD** /s/Thomas P. Swanton |
|---|---|

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

**I.**      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

**III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of the case.

**VI.**    CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**  RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should endure the accuracy of the information provided prior to signing the form.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **c/o United States Attorney's Office** | ) | **Civil Action No.** |
| **555 Fourth St., N.W.** | ) | |
| **Washington, D.C. 20530** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **$302,032.43 IN FUNDS SEIZED FROM** | ) | |
| **THE M&T BANK ACCOUNT ENDING** | ) | |
| **IN 6629, HELD IN THE NAME** | ) | |
| **OF "VENTRICLE ADVISORY** | ) | |
| **CONSULTANTS ESCROW ACCOUNT,"** | ) | |
| **and** | ) | |
| | ) | |
| **$147,001.20 IN FUNDS SEIZED FROM** | ) | |
| **THE M&T BANK ACCOUNT ENDING** | ) | |
| **IN 1852, HELD IN THE NAME** | ) | |
| **OF "VENTRICLE ADVISORY** | ) | |
| **CONSULTANTS,"** | ) | |
| | ) | |
| **Defendants.** | ) | |

## WARRANT FOR ARREST *IN REM*

TO:   THE UNITED STATES MARSHAL'S SERVICE AND/OR ANY OTHER DULY
AUTHORIZED LAW ENFORCEMENT OFFICER:

WHEREAS a Verified Complaint for Forfeiture *In Rem* has been filed in the United
States District Court for the District of Columbia, on the 17th day of January 2018, alleging that
the defendant property is subject to seizure and forfeiture to the United States pursuant to 18
U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 981(a)(1)(A),

YOU ARE, THEREFORE, HEREBY COMMANDED to serve the defendant property, thus bringing, within the jurisdiction of the Court, the said defendant property, more fully described as:

**$302,032.43 in funds seized from The M&T Bank Account ending in 6629, held in the name of "Ventricle Advisory Consultants Escrow Account,"**

**and**

**$147,001.20 in funds seized from The M&T Bank Account ending in 1852, held in the name of "Ventricle Advisory Consultants,"**

YOU ARE FURTHER COMMANDED to provide notice of this action to all persons thought to have an interest in or claim against the defendant property by serving upon such persons a copy of this warrant and the Verified Complaint *In Rem*, in a manner consistent with the principles of service of process of an action *in rem* under the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, and the Federal Rules of Civil Procedure.

YOU ARE FURTHER COMMANDED, promptly after execution of this process, to file the same in this Court with your return thereon, identifying the individuals upon whom copies were served and the manner employed.


Dated: January _____, 2018

_____
Clerk of the Court


By:   _____
Deputy Clerk

2